## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

CODIE DANIELS,
ADC #144455                                                                                   PLAINTIFF

V.                                          5:14CV00360 BSM/JTR

CONNIE HUBBARD, APN,
Varner Unit, Arkansas Department of Correction, et al.                    DEFENDANTS

## RECOMMENDED PARTIAL DISPOSITION

The following Recommended Partial Disposition ("Recommendation") has

been sent to United States Chief District Judge Brian S. Miller.  Any party may file

written objections to this Recommendation. Objections must be specific and include

the factual or legal basis for disagreeing with the Recommendation. An objection to

a factual finding must specifically identify the finding of fact believed to be wrong

and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the

United States District Clerk within fourteen (14) days of this Recommendation. If no

objections are filed, Judge Miller can adopt this Recommendation without

independently reviewing all of the evidence in the record. By not objecting, you may

also waive any right to appeal questions of fact.

# I.  Introduction

Plaintiff, Codie Daniels, is a prisoner in the Varner Unit of the Arkansas Department of Correction ("ADC").  He has filed this *pro se* action alleging that Defendants APN Hubbard, Nurse Burnett, Health Services Administrator King, and Nurse Clowers violated his constitutional rights and committed the state tort of medical malpractice when they failed to provide him with proper medical care for a severe eye injury. *Docs. 2, 5, 6 & 24.*

Defendants have filed a Motion for Summary Judgment and supportive pleadings arguing that all claims against them should be dismissed, without prejudice, because Plaintiff failed to properly exhaust his administrative remedies.[1] *Docs. 45, 36, 47, & 62*. Plaintiff has filed several Responses challenging that argument.  *Docs. 57, 58, 59, 66, & 71*. Thus, the issues are properly joined and ready for disposition.[2]

---

[1]  Defendants' Motion includes 186 pages of grievances. *Doc. 46, Ex. D.* Many of those grievances deal with *irrelevant matters*, such as Plaintiff's complaints about the medical care he received for high blood pressure, "flashbacks," and a 2012 hip injury.  In the future, it would be helpful to the Court if Defendants included *only* the prisoner's *relevant* grievances.

[2]  Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial.  *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

## II. Facts

The facts, viewed in the light most favorable to Plaintiff, are as follows:

1.      On September 27, 2011, Plaintiff, sustained severe damage to his left eye when he was beaten by a  prisoner with a "lock in a sock."[3]  *Docs. 2, 5, 6 & 24.*

2.      Defendants Bennett and Hubbard treated Plaintiff's eye injuries in the prison infirmary with ice, a dressing, and over the counter pain medications. *Id.*

3.      On October 1, 2011, Plaintiff was transported to the University of Arkansas for Medical Sciences Hospital ("UAMS"), where he had surgery on his left eye.  Later that day, he was transferred to the ADC Diagnostic Unit hospital for post-operative care.  *Doc. 62, Ex. A.*

4.      During the next five days, prison nurses gave Plaintiff Tylenol 3, which is the strongest medication available at the Diagnostic Unit for pain management.[4] Plaintiff wore a bandage over his left eye at all times, and he spent the majority of the day in bed. *Doc. 62, Ex. A at 7.*

5.      On October 6, 2011, Plaintiff was transported to UAMS for a second surgery on his left eye, and he returned to the Diagnostic Unit later that day.  *Id.*

---

[3]  Plaintiff alleges that his left eye was "ruptured" and "was literally hanging out of its' socket." *Doc. 2 at 1.*

[4]  Tylenol 3 is a combination of acetaminophen and codeine, which is a narcotic. www.mayoclinic.org/drugs-supplements.

6.      For the following five days, prison nurses gave Plaintiff Tylenol 3, steroids, and antibiotics.  During that time period, Plaintiff spent the majority of the day in bed.  *Id.*

7.      On October 11, 2011, Plaintiff was transferred from the Diagnostic Unit to the Varner Unit, with instructions that he remain on bed rest for two weeks, keep his left eye bandaged, take Tylenol 3 for pain, and continue using steroids and antibiotic eye drops.  *Id.* Because there were no available beds in the Varner Unit infirmary, Defendants Clowers and King put Plaintiff in isolation in one of the Varner Unit day rooms.

8.      For the next two weeks, Plaintiff slept on two mattresses on the day room floor, which he claims was infested with mice and spiders. Plaintiff alleges that the unsanitary conditions in the day room caused his left eye to improperly heal.  *Docs. 2, 5, 6 & 24.*

9.      Plaintiff alleges that, over the next several months, Defendant Hubbard failed to properly provide him with post-surgical eye medications.  *Id.*

10.     Plaintiff contends that he has lost all or most of his vision in his left eye.  *Id.*

### III.  Discussion

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81-89-91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

To fully exhaust administrative remedies about a medical matter, an ADC prisoner must file: (1) an informal resolution with the medical staff within fifteen days of the incident; (2) a grievance with the Health Services Administrator; and (3) an

appeal to the ADC Deputy Director for Health and Correctional Programs. *Doc. 46, Exs. A, B, & C* (ADC Adm. Dir. § III and IV). Importantly, the ADC's exhaustion policy requires inmates to "specifically name each individual" involved, and those instructions are repeated on the grievance forms themselves. *Id*. (§ IV (C)(4), (E)(2), and (N)). Finally, the ADC's exhaustion policy advises prisoners that their federal lawsuit may be dismissed if they fail to properly comply with each of those requirements before filing a lawsuit. *Id.* (§ (C)(4)).

The parties disagree as to whether Plaintiff properly exhausted his administrative remedies regarding the specific medical care claims he has raised against each of the Defendants. The Court will address each claim separately.

## A.     Delay In Surgery Claim Against Defendants Burnett & Hubbard

Plaintiff alleges that Defendants Burnett and Hubbard failed to provide him with constitutionally adequate medical care and committed medical malpractice when they delayed sending him to UAMS, for eye surgery, for four days.

On October 27, 2011, Plaintiff filed an informal resolution raising his "delay in surgery claim" against Defendants Hubbard and Burnett. *Doc. 59, Exs. A, B, & D.* After the informal resolution was denied, Plaintiff filed grievance VU 11-1117 renewing his allegations. *Id.* Prison officials denied grievance VU 11-1117 because his informal resolution was not filed within fifteen days of the grieved incident, as

required by the ADC's exhaustion policy.[5]  *Id.*

On appeal, Plaintiff argued that it was "impossible" for him to meet the 15 day deadline because he was hospitalized, in "critical condition," and recovering from two eye surgeries.  *Id.*  The ADC Deputy Director rejected the appeal -- without reaching the merits -- because Plaintiff did not attach a copy of grievance VU 11-1117 to his appeal, as required by the ADC's exhaustion policy. *Id.*

### 1.    Untimely Informal Resolution

Defendants Burnett and Hubbard argue that they are entitled to summary judgment because the informal resolution raising Plaintiff's delay in surgery claim was rejected as being untimely filed.  The Court finds no merit to this argument.

First, the PLRA requires inmates to exhaust their "available" administrative remedies.  42 U.S.C. § 1997e(a).  Courts have recognized that "[p]hysicial or mental infirmities may render administrative remedies 'unavailable,' and excuse a prisoner from complying with the PLRA's exhaustion requirement." *Michalek v. Lunsford*, 2012 WL 1454162 (E.D Ark. April 5, 2012) (unpublished decision) (finding that prisoner's mental illness prevented him from filing a grievance); *Braswell v. Corr.*

---

[5]  The deadline for filing the informal resolution is 15 calendar days from the incident. *Doc. 46, Exs. A, B, and C* (ADC Admin. Dir. § IV(E)(1)).  It is unclear whether that 15 day period started on September 27, 2011 (the date Plaintiff was injured) or September 30, 2011 (the last day Plaintiff was at the Varner Unit before being transported to UAMS).  Fifteen calendar days from September 30, 2011 was October 15, 2011, which was *twelve days before* Plaintiff filed his informal resolution on October 27, 2011.  Thus, even if the Court gives Plaintiff the benefit of the later starting date, it is clear that his informal resolution was untimely filed.

*Corp. of America*, 419 F. App'x 622, 625-26 (6th Cir. 2011) (reversing summary judgment where there was "substantial doubt" as to whether a prisoner was "mentally capable of filing a grievance"); *see also Days v. Johnson*, 322 F.3d 863, 867-68 (5th Cir. 2003) (holding that a prisoner's broken hand prevented him from exhausting his administrative remedies), *overruled by implication on other grounds, Jones*, 549 U.S. at 216.

Here, it is *undisputed* that, during the fifteen day period for filing an informal resolution, Plaintiff was: (1) recovering from two surgeries that were performed to repair severe damage to his left eye; (2) hospitalized or confined to bed rest; and (3) taking Tylenol 3, which is the *strongest painkiller* allowed in the ADC.  Plaintiff also alleges that, despite receiving medication, he was bed ridden, in pain, and suffering from "severe headaches." *Doc. 58 at 5.* Construing the facts in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether he was physically and mentally capable of filing an informal resolution during the fifteen day period.[6]

Second, it is well settled that "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002).

---

[6] The Court also finds it persuasive that, when appealing the denial of grievance VU 11-1117, Plaintiff argued, as he does in this lawsuit, that his eye trauma, pain, and medications prevented him from meeeting the fifteen day requirement. Thus, Plaintiff clearly gave prison officials the *first opportunity* to consider his explanation for why his informal resolution was untimely filed.

Plaintiff alleges that, while he was in the Diagnostic Unit, a prison guard refused to give him an informal resolution form because he was "on bed rest and (could) worry about that later." *Doc. 50 at 5.* Thus, there is also a genuine dispute of material fact as to whether a prison official prevented Plaintiff from timely filing his informal resolution. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (a prisoner's allegations that prison officials denied his requests for grievance forms could raise an inference that he was prevented from utilizing the available administrative remedies).

For these reasons, the Court concludes that Defendants have not satisfied their burden of proving that they are entitled to summary judgment because Plaintiff's informal resolution was untimely filed.

## 2.     Improper Appeal of Grievance VU 11-1117

Defendants Burnett and Hubbard also argue that they are entitled to summary judgment because Plaintiff did not attach a copy of grievance VU 11-1117 to his appeal, as required by the ADC's exhaustion policy. *Doc. 46, Exs. A, B, & C* (ADC Admin. Dir. § IV(G)(2)).

In his Response to the Motion for Summary Judgment, Plaintiff "assures the Court, under penalty of perjury" that he did, in fact, attach a copy of grievance VU 11-1117 to his appeal, and that prison guards either lost or removed it when they mailed his appeal to the ADC Deputy Director. *Doc. 58 at 6-7.* Additionally, on August 12,

2012 -- which was long before he filed this lawsuit -- Plaintiff sent the ADC Deputy Director a sworn Affidavit complaining that prison officials were losing or deliberately misplacing his grievances. *Docs. 59, Ex. F.* That Affidavit, along with Plaintiff's sworn assertion, create a genuine dispute of material fact as to whether prison officials prevented him from properly appealing the denial of grievance VU 11-1117.

Thus, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Defendants Burnett and Hubbard have not met their burden of establishing that Plaintiff failed to properly exhaust his "available" administrative remedies in regard to his claim that they unnecessarily delayed in sending him to UAMS surgery. Thus, they are not entitled to summary judgment on Plaintiff's "delay in surgery claim."

**B.     Post-Surgical Medications Claim Against Defendant Hubbard**

Plaintiff alleges that Defendant Hubbard provided him with constitutionally inadequate medical care and committed medical malpractice when she failed to properly give him post-surgical eye medications.

Defendant Hubbard argues that, *as to her,* Plaintiff failed to properly exhaust his administrative remedies on that claim. In response, Plaintiff points to seven fully exhausted grievances he filed alleging that various prison nurses and doctors -- *but not*

*Defendant Hubbard* -- failed to properly give him post-surgical eye medications. *Doc. 46, Ex. D* (grievances VSM 12-16; VSM 12-83, VSM 12-333, VSM 12-530, VSM 12-1252, VSM-1253, VSM 12-4800).

As previously mentioned, the ADC's exhaustion policy required Plaintiff to specifically name Defendant Hubbard in a fully and properly exhausted grievance.[7] The parties *agree* that Plaintiff never named Defendant Hubbard in any of his grievances complaining about not receiving his post-surgical medications.  By failing to name Defendant Hubbard and to allege any wrongdoing on her part regarding in his alleged failure to receive his post-surgical medications, he deprived prison officials of the opportunity to investigate and address the merits of the claim he is now attempting to raise against Defendant Hubbard, *for the first time,* in this federal lawsuit. *See Burns v. Eaton*, 752 F.3d 1136, 1137 (8th Cir. 2014) (holding that a prisoner must exhaust his administrative remedies about his specific claims against each separate defendant); *Champion v. Akins*, 498 Fed. Appx. 670 (8th Cir. Feb. 25, 2013) (unpublished opinion) (finding no exhaustion where a prisoner's grievance failed to allege any wrongdoing on the part of the defendant named in his lawsuit).

In an effort to defeat summary judgment, Plaintiff argues that he has filed numerous grievances alleging that other prison medical providers were not properly

---

[7] This requirement is explicitly stated on the grievance form itself. *Doc. 46, Exs, A, B, & C (*ADC Admin. Dir.  § IV (C)(4), (E)(2), and (N)).

dispensing his post-surgical eye medications and that his "substantial efforts" should be sufficient to satisfy the PLRA's exhaustion requirement as to the claim he is now raising against Defendant Hubbard in this action. *Doc. 58 at 9-12.* However, the Supreme Court has squarely rejected that argument and held that, to satisfy the PLRA, a prisoner must properly comply with the specific exhaustion requirements of the incarcerating facility. *See Jones*, 549 U.S. at 211 (2007) (holding that proper exhaustion "is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *Woodford*, 548 U.S. at 90 (explaining that proper exhaustion"means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Here, the *undisputed* evidence demonstrates that Plaintiff did not do so.

Thus, Defendant Hubbard is entitled to summary judgment on Plaintiff's claim that she failed to properly give him the prescribed post-surgical eye medications, and that claim should be dismissed, without prejudice.

## C.     Improper Housing Claim Against Defendants Clowers & King

Plaintiff alleges that, when he returned to the Varner Unit on October 12, 2011, Defendants Clowers and King failed to provide him with constitutionally adequate medical care and committed medical malpractice when they forced him to sleep on the

floor in Varner Unit day room.[8]

Defendants Clowers and King argue that they are entitled to summary judgment because Plaintiff did not fully exhaust any grievance raising that claim. *Doc. 46, Exs. D & E.* In contrast, Plaintiff alleges that he properly exhausted his administrative remedies in an informal resolution he filed on August 1, 2014. *Doc. 58, Ex. G.* Plaintiff's argument is flawed for two reasons.

First, the informal resolution that Plaintiff relies on is completely illegible, thereby making it impossible to determine if he actually presented prison officials with the improper housing claim he is now asserting against Defendants Clowers and King.

Second, and more importantly, it is *undisputed* that Plaintiff did *not* go on to file a grievance and an appeal raising his improper housing claim against Defendants Clowers and King, as he was required to do by the ADC's exhaustion policy. Plaintiff now argues that he did not do so because prison officials failed to respond to his August 1, 2014 informal resolution. However, the ADC exhaustion policy requires prisoners to proceed to the next step of the grievance process, even when they do not receive a response to an informal resolution. *Doc. 46, Exs. A, B, & C* (ADC Admin. Dir. § IV(E)(11). Thus, when Plaintiff did not receive a response to his August 1,

---

[8]  These are the only claims Plaintiff has raised against Defendants Clowers and King.

2014 informal resolution, he was required by ADC policy to file a grievance raising his improper housing claim against Defendants Clowers and King.  It is undisputed that Plaintiff did not do so.

Because the *undisputed* evidence demonstrates that Plaintiff did not properly exhaust his available administrative remedies against Defendants Clowers and King, they are entitled to summary judgment and they should be dismissed, without prejudice, as Defendants from this action.

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' Motion for Summary Judgment *(Doc. 45)* be GRANTED in part and DENIED in part.

2.      Plaintiff be allowed to PROCEED with his delay in surgery claim against Defendants Burnett and Hubbard.

3.      All other claims against Defendants Burnett and Hubbard be DISMISSED, WITHOUT PREJUDICE.

4.      All claims against Defendants King and Clowers be DISMISSED, WITHOUT PREJUDICE, and they be dismissed as parties to this action.

5.      The parties be given additional time to complete discovery and file any further dispositive motions.

Dated this 2nd day of November, 2015.

_____
UNITED STATES MAGISTRATE JUDGE