## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

CODIE DANIELS,
ADC #144455                                                     PLAINTIFF

V.                              5:14CV00360 BSM/JTR

CONNIE HUBBARD, APN; and
JOANNE BURNETT, LPN,
Varner Unit, Arkansas Department of Correction          DEFENDANTS


### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller. Any party may file written objections to this Recommendation.  Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I.  Introduction

Plaintiff, Codie Daniels ("Daniels"), is a prisoner in the Varner Unit of the Arkansas Department of Correction.  He has filed this *pro se* § 1983 action alleging that Defendants Licensed Practical Nurse Joanne Burnett ("Burnett") and Advanced Practical Nurse Connie Hubbard ("Hubbard") failed to provide him with constitutional adequate medical care for injuries to his left eye.[1] *Docs. 2, 5, 24, & 50.*

Burnett and Hubbard have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply.  *Docs. 83, 84, 85, & 92.* Daniels has filed a Response, a Brief in Support, a Statement of Disputed Facts, and two Replies.  *Docs. 89, 90, 91, 93, & 94.*

Before addressing the merits of the Motion for Summary Judgment, the Court will set forth the relevant facts, viewed in the light most favorable to Daniels, which support his claim against Burnett and Hubbard:

1.     On September 27, 2011, Daniels got into a fight with approximately ten other inmates at the Varner Unit.  During the fight, an inmate hit Daniels in the left eye with a lock in a sock. At 3:47 p.m., Burnett examined Daniels in the prison infirmary. She noted that Daniels's had an abrasion to his left eye and that his eyelids were swollen shut.  Burnett gave Daniels an ice pack and arranged for him to be seen

---

[1] The Court has previously dismissed, without prejudice, all other claims raised by Daniels. *Doc. 73.*

by Hubbard.  *Doc. 84, Ex. A at 1; Ex. B at 19, & 51-52.*

2.     On September 28, 2011, at 4:44 p.m., Hubbard examined Daniels in the prison infirmary.  She noted that Daniels had gross swelling of the sclera and conjunctiva of his left eye.  Daniels also had reduced vision and a limited range of motion, which Hubbard believed could have been caused by gross edema.  To treat Daniels's eye injury, Hubbard ordered: (a) naproxen and an ice pack for pain; (b) restrictions from all activities; (c) an x-ray (which later showed no facial bone damage); and (d) an *urgent* written consultation request seeking permission to have Hubbard examined at the UAMS Jones Eye Institute in Little Rock, Arkansas ("Jones Eye Institute").  Hubbard also called the ADC Regional Medical Director and obtained his verbal approval for a consultation with the Jones Eye Institute.  She then made an appointment for Daniels with the Jones Eye Institute.  *Doc. 84, Ex. A at 1-6.*

3.     On September 30, 2011, Daniels was transported from the Varner Unit to the Jones Eye Institute. The examining ophthalmologist ordered a CT, which revealed a posterior rupture of Daniel's left eye. Later that evening, the ophthalmologist surgically repaired Daniels's ruptured globe.  During the surgery, the ophthalmologist discovered that Daniels's retina was detached and determined that it would have to be repaired in a later surgery performed by the retina team at the Jones Eye Institute.  Daniels stayed in the hospital overnight. *Id. at 6-16.*

-3-

4.      On October 1, 2011, Daniels was discharged from the hospital and transported to the ADC Diagnostic Unit, where he was treated by non-party prison medical providers for the next five days.  *Id. at 17-39.*

5.      On October 6, 2011, Daniels was transported from the Diagnostic Unit to the Jones Eye Institute, where the retina team surgically repaired his detached retina.  *Id. at 40-44.*  Daniels returned to the Diagnostic later that evening.  *Id.*

6.      Daniels contends that he now has glaucoma and that his vision in the left eye is greatly reduced.  *Id., Ex. B at 49 & 79.*

## II.  Discussion

Daniels alleges that Burnett and Hubbard denied him constitutionally adequate medical care by waiting until September 30, 2011, to send him to an ophthalmologist for treatment of his left eye injuries.[2]

To prevail on that claim, Daniels must prove that:  (1) he had an objectively serious medical need for ophthalmologic care; and (2) Burnett and Hubbard subjectively knew of, but deliberately disregarded, that serious medical need.  *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d

---

[2] In his Complaints,  it appeared Daniels was also alleging that Hubbard failed to ensure that he received the proper eye medications *after* his September 30 and October 6, 2011 surgeries.  *Docs. 2, 5, 24, 50, & 73.*  However, in his deposition and summary judgment papers, Daniels clarifies that he is *not pursuing any post-surgical claims* against Hubbard, and that his only claim against Hubbard is her alleged three-day delay (from September 27 to 30, 2011) in sending him to an ophthalmologist.  *Doc. 84, Ex. B at 157-60 & 169-171.*

445, 460 (8th Cir. 2010). Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Daniels does *not* have any evidence suggesting that Burnett and Hubbard acted with deliberate indifference when they treated his left eye injuries. To the contrary, it is *undisputed* that Burnett and Hubbard immediately examined Daniels; gave him ice and pain medications; restricted his activities; ordered an x-ray; and expedited an *urgent* request to have him examined at the Jones Eye Institute. Further, in a sworn Affidavit, Dr. Floss avers that, in his professional medical opinion, Burnett and Hubbard "appropriately treated Mr. Daniels" and "timely referred [him] to the UAMS Jones Eye Institute."[3] *Doc. 84, Ex. C at 2-3.* Daniels has not offered *any evidence* to refute the medical opinions expressed by Dr. Floss in his Affidavit or to support his own personal lay opinions about Burnett and Hubbard's medical decisions. *See Langford,* 614 F.3d at 460 (explaining that a prisoner's disagreement with treatment decisions made by medically trained personnel does not rise to the level of a constitutional violation); *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010)

---

[3] Dr. Robert Floss is family practice physician, who currently serves at the ADC Associate Regional Medical Director. *Docs. 84, Ex. C.*

(explaining that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

Instead, Daniels *speculates* that the vision in his left eye would currently be better if Burnett and Hubbard had sent him to an emergency room or an ophthalmologist on September 27, 2011.[4] However, Dr. Floss explains that "[m]ost emergency rooms do not have an ophthalmologist on staff" who could have performed the surgery Daniels needed. *Doc. 84, Ex. C at 4-5.* Thus, it is Dr. Floss's opinion that, even if "Daniels had been transported to an emergency room immediately after his injury," he would "have likely been given the same appointment at the Jones Institute that he received." *Id.* Finally, and most importantly, Dr. Floss concludes that the vision in Daniels's left eye was *not* adversely affected by the three-day delay in being taken to the ophthalmologist and that, instead, the loss in Daniels's visual acuity was due to "the injury itself." *Id.*

_____

[4] Daniels *alleges* that an ophthalmologists from the Jones Eye Institute said that "the delay in me seeing him may have hurt my future." *Doc. 90 at 13.* However, Daniels's testimony about this alleged statement by the ophthalmologist is inadmissible hearsay. To defeat summary judgment, Daniels must have an affidavit, deposition testimony, or some other form of admissible evidence directly from the ophthalmologist who allegedly made that statement. *See Mason v. Corr. Med. Servs., Inc.,* 559 F.3d 880, 885 (8th Cir. 2009) (holding, in a § 1983 inadequate medical care case, that a prisoner could not defeat summary judgment by referring to inadmissible hearsay statements allegedly made by a physician); *Tuttle v. Lorillard Tobacco Co.,* 377 F.3d 917, 923 (8th Cir. 2004) (holding that a plaintiff "cannot rely on hearsay to avoid summary judgment").

Daniels has not presented any admissible evidence to refute Dr. Floss's professional medical opinion or to otherwise demonstrate that his prognosis was adversely affected by the three-day delay in being seen by an ophthalmologist. *See Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (holding that, to avoid summary judgment, an inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment"); *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997) (same). Thus, Burnett and Hubbard are entitled to summary judgment and Daniels's inadequate medical care claim against them should be dismissed, with prejudice.

## III.   Conclusion

IT IS THEREFORE RECOMMENDED THAT Burnett's and Hubbard's Motion for Summary Judgment *(Doc. 83)* be GRANTED, and Daniels's inadequate medical care claim against them be DISMISSED, WITH PREJUDICE.

Dated this 9th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE